UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| RUSSELL COURTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:07-CV-04031-MMM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

This matter is now before the Court on Plaintiff's Motion for Summary Judgment [#10] and the Commissioner's Motion for Summary Affirmance [#12]. For the reasons set forth below, the Commissioner's final decision is REVERSED, and this matter is REMANDED for rehearing.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g) as the Commissioner has issued a final decision after a hearing to which Plaintiff was a party.

**BACKGROUND**

I. Procedural Background

Plaintiff, Russell Courter ("Courter"), applied for a period of disability and disability insurance benefits ("DIB") on September 10, 2004, alleging disability due to back and leg pain that began on December 13, 2002. Administrative Record ("AR") at 64. The Social Security Administration ("SSA") denied his application initially and upon reconsideration. AR. at 40, 44. Subsequently, Courter requested review by an Administrative Law Judge ("ALJ"). AR. at 50.

On May 11, 2006, a hearing was held before ALJ Andrew T. Palestini. AR. at 290. He issued a written decision on January 24, 2007, finding that Courter was not disabled. AR. at 13, 19. Courter filed a Request for Review of the ALJ's decision with the SSA Appeals Council. AR. at 9. On April 20, 2007, the ALJ's decision became the final decision of the Commissioner when the SSA Appeals Council denied Courter's Request for Review. AR. at 5. Courter then filed a complaint requesting judicial review of the final decision. He has now filed a Motion for Summary Judgment seeking reversal of the Commissioner's decision, and the Commissioner has filed a Cross-Motion for Summary Affirmance. This Order follows.

II. Factual Background

At the time of the administrative hearing, Courter was 59 years old, 5'10" and weighed approximately 190 pounds. AR. at 294. He has a high school education and last worked in June, 2001, as a truck driver. AR. at 294, 296. He was employed in that position for over thirty years. AR. at 294.

1. Courter's Testimony

Courter testified that he traveled to the hearing site while his wife drove and he reclined in the back of the vehicle. AR. at 293. He indicated that this was his usual practice when traveling any distance. AR. at 293. He stated that he possessed an unrestricted driver's license, but had driven only briefly on two occasions since 2002 due to leg cramps, back cramps, and spasms. AR. at 295. Courter testified that he retired from the trucking industry in June 2001 after his back bothered him for the previous year. AR. at 296.

Courter initially had trouble sitting for any period of time. AR. at 7. However, the pain progressed to a degree that he had trouble standing for a long period, lying down, or becoming comfortable in any position. AR. at 298. The pain was constant and located mainly in his lower back, but it also affected his thighs. AR. at 298. Courter testified that he "can't bend or squat or pick up much." AR. at 304. When standing, he shifted his weight from one leg to the other because standing straight for a long period caused pain. AR. at 299. He estimated that he could stand straight for an hour or two before his legs became sore and required rest. AR. at 301. Each day, he took an hour long walk before he had to rest. AR. at 301. Courter stated that he was most comfortable during the morning walks. AR. at 301. When asked by his attorney what caused these pains, Courter stated that his doctor had diagnosed him with degenerating disks, arthritis, and fibromyalgia.

Courter's sister-in-law, Patricia Lingafelter, also testified briefly at the hearing. AR. at 310-313. She testified that Courter had to lie on the floor at family gatherings. AR. at 312. In addition, at Courter's 40th wedding anniversary party in April 2006, she witnessed him sit only briefly to eat before he was up walking again. AR. at 312.

2. Courter's Medical History

From January to June, 2003, Courter saw Dr. David Collins, M.D., at Orthopedic and Rheumatology Associates. AR. at 142-144. An MRI showed multilevel lumbar spondylosis without radiculopathy and multilevel degenerative disc disease. AR. at 143. Dr. Collins discussed that Courter's pain appeared to be muscular in nature and there were no surgical indications. AR. at 142. He noted that Courter had normal station and gait, as well as an ability to walk without difficulty. AR. at 144. Dr. Collins recommended

that Courter "stay as active as possible in the lower back, and have judicious use of medications as well as physical therapy." AR. at 142.

From January 15, 2003 to March 4, 2003, Courter visited Kevin P. Farrell, Ph.D., a physical therapist with Rock Valley Physical Therapy. AR. at 122. During this time, Courter received modalities to the back, as well as soft-tissue and mobilization treatments. AR. at 122. Dr. Farrell noted that Courter's "strength has improved tremendously, as has his posture." AR. at 122. Dr. Farrell diagnosed Courter with chronic back pain and recommended that he continue an exercise routine that is as aggressive as possible without increasing irritation. AR. at 122, 123.

On March 6, 2003, Dr. Collins referred Courter to a clinic to receive pain injections. AR. at 168, 169. At the clinic, Dr. Narayanswamy Rama-Prabhu, M.D., diagnosed Courter with low back pain and left sacroiliac joint dysfunction. AR. at 169. He also noted that Courter had a small, focal central disc herniation at T11/12. AR. at 169. Dr. Rama-Prabhu administered a series of lumbar epidural injections that greatly improved Courter's leg pain. AR. at 164-171.

On March 11, 2004, Dr. Timothy Millea, M.D., saw Courter after he complained of lower back and extremity pain. AR. at 233. Dr. Millea stated that Courter's symptoms progressively increased even though his activities had diminished. AR. at 233. He also noted that prolonged standing caused increased symptoms. AR. at 234. Although Dr. Millea discussed that surgery was unnecessary, he diagnosed Courter with chronic lower back pain and proximal lower extremity pain without radiculopathy. AR. at 238.

On January 12, 2005, state agency physician Dr. Francis Vincent, M.D., reviewed Courter's medical evidence. AR. at 266-273. He summarized that Courter

had reduced left ventricular ejection fraction and was asymptomatic. AR. at 273. In addition, Courter had 5/5 motor strength in all of his extremities. AR. at 273. There was, however, evidence of decreased range of motion in Courter's lumbar spine. AR. at 273.

In his report, Dr. Vincent gave an opinion regarding Courter's work limitations. AR. at 267. He concluded that Courter had the ability to lift 50 pounds occasionally and 25 pounds frequently. AR. at 267. He could stand, sit, and/or walk about six hours a day in an eight-hour workday. AR. at 267. Courter could engage in unlimited pushing or pulling. AR. at 267. However, he could only occasionally climb, stoop, kneel, crouch or crawl. AR. at 268.

On January 5, 2005, Dr. Stanley Rabinowitz, M.D., conducted a disability examination. AR. at 203. His notes state that Courter "is able to perform the usual activities of daily living." AR. at 204. In his summary, Dr. Rabinowitz mentioned that the "physical examination did reveal decreased range of motion testing of the lumbar spine with paravertebral muscle spasm." AR. at 203. However, he also noted that Courter's range of motion testing was within normal limits and his gait and station were normal. AR. at 203. Dr. Rabinowitz diagnosed Courter with chronic LS pain syndrome and a mildly reduced left ventricular ejection fraction. AR. at 206.

On February 11, 2005, Courter received an MRI of his lumbar spine from Dr. Timothy Humes, M.D., at the Metro MRI Center. AR. at 208. In his notes, Dr. Humes discussed that Courter's MRI revealed there was "no evidence of acute abnormality within the lumbar spine." AR. at 208. However, he did state that "mild degenerative facet arthropathy is seen," as well as a mild case of osteoarthritis. AR. at 208, 209.

From March, 2002 to May, 2006, Courter visited his primary care physician, Dr.

David Marcowitz, M.D. AR. at 212-265, 275-286. In February, 2005, Dr. Marcowitz stated that Courter could not operate a vehicle or heavy equipment due to the side-effects of his medication. AR. at 212. He also stated that Courter was unable to work for the past three years due to his back pain and stiffness. AR. at 286. He diagnosed Courter with degenerative disc disease and fibromyalgia. AR. at 286. Dr. Marcowitz stated that Courter "will not be able to hold any kind of gainful employment." AR. at 286.

### 3. The Vocational Expert's Testimony

Vocational Expert ("VE"), Roger Marquardt testified at the hearing. AR. at 314. The ALJ asked the VE to consider a hypothetical individual of Courter's age and education, who's ability to perform work was limited by the following limitations: (1) sitting for only two hours a day with breaks every quarter of an hour from sitting; (2) could be on their feet for a total of six to eight hours a day, with a break at least every hour to move about; (3) could occasionally bend, squat, crawl, kneel, stoop, and climb stairs; (4) could never climb ladders or work at heights; and (5) could not engage in work that involved fast physical movements or changes of positions. AR. at 315. The ALJ also asked the VE to assume that the hypothetical individual could perform such work at a medium exertion level. AR. at 316.

Given those limitations, the VE determined that Courter could not perform his past work and there were no transferable skills. AR. at 316. However, the VE testified that there were medium, unskilled positions that Courter could perform. AR. at 316. The positions were as a "table operator helper" (740 positions in Illinois and 50,000 nationwide), "machine stacker" (170 positions in Illinois and 35,000 nationwide), and as a "conveyor feeder" or "off bearer" (6,200 positions in Illinois and 145,000 nationwide).

AR. at 316, 317.

> 4. The ALJ's Decision

After reviewing the medical evidence and the testimony of the VE, the ALJ determined that Courter was not disabled within the meaning of the Social Security Act. In reaching his decision, the ALJ conducted the five-step test as set forth in the SSA regulations. AR. at 15. *See* 20 C.F.R. § 404.1520. First, following an examination of the record, the ALJ determined that Courter had not engaged in substantial gainful activity since the alleged onset of his disability on December 13, 2002. AR. at 15. Under the second step, the ALJ found that he was impaired with a "severe" case of degenerative disc disease and a mild heart condition. AR. at 15. Next, the ALJ found under the third step that Courter's impairments did not meet one of the impairments that the SSA presumes disabling. AR. at 16. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1. Given that determination, the ALJ was then required to determine Courter's residual functional capacity ("RFC").

The ALJ determined that Courter had the maximum RFC to: (1) lift and carry 50 pounds occasionally and 25 pounds frequently; (2) sit for two hours a day with breaks; (3) stand and walk for six hours but requires a break at least every hour from static standing so he can move about; (4) could no more than occasionally lift, bend, squat, kneel, stoop, and climb stairs; (5) can never climb ladders or work at heights; and (6) could not engage in work that involved very fast movement or changes of positions. AR. at 16. In making this RFC determination, the ALJ considered Courter's pain and symptoms to the extent he found them credible. AR. at 16.

After discussing Courter's testimony, the ALJ found that his allegations were not

fully credible as he reported an ability "to perform usual activities of daily living" to at least one examiner. AR. at 14. In addition, the ALJ pointed to Courter's improved symptoms following physical therapy. AR. at 14. The ALJ also discussed Dr. Rabinowitz's findings that Courter had 5/5 strength for his extremities, no evidence of nerve root irritation, and normal gait and station results. AR. at 15. He also noted that a physician from Orthopedic and Rheumatology Associates recommended that Courter "should stay as active as possible with judicious use of medications and physical therapy." AR. at 14.

Based on the VE's testimony, the ALJ acknowledged under step four that Courter would be unable to return to his previous work given his RFC. AR. at 17. However, under step five, the ALJ found that there were significant jobs in the state and national economy which Courter could perform. AR. at 17. Given the hypothetical work restrictions, the VE testified that Courter would be able to perform medium, unskilled work as a table operator helper, machine stacker, and as a conveyor feeder. AR. at 17. The ALJ noted this testimony and concluded that Courter was not entitled to a period of disability or DIB under the Social Security Act at any time through the date of the decision. AR. at 17.

## DISCUSSION

Courter asks this Court to reverse the Commissioner's denial of a period of disability and DIB because the ALJ: (1) failed to ask whether conflicts existed between the VE's testimony and the Dictionary of Occupational Titles (the "DOT"); (2) failed to develop the record; (3) erred by failing to properly assess the side-effects of Courter's medications and failed to present an adequate hypothetical question; (4) failed to use

the grids as a framework for determining disability; and (5) erred in assessing the credibility of Courter's testimony.

To qualify for SSI, a claimant must show that his or her inability to work is medical in nature and that he or she is totally disabled. 20 C.F.R. § 416.972(a). Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a claimant is eligible for disability benefits. See 20 C.F.R. §§ 404.1566, 416.966. The establishment of disability under the Act is a two-step process. First, the claimant must suffer from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the claimant unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. See 20 C.F.R. §§ 404.1520, 416.920.

> The five-step test is examined by the ALJ, in order, as follows:
>
> (1) is the claimant presently unemployed; (2) is the claimant's impairment "severe"; (3) does the impairment meet or exceed one of the list of specified impairments; (4) is the claimant unable to perform his or her former occupation; and (5) is the claimant unable to perform any other work within the national economy? An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the claimant is not disabled. Garfield v. Schweiker, 732 F.2d 605, 607 n.2 (7th Cir. 1984).

The claimant has the burdens of production and persuasion on steps 1 through 4;

however, once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985).

The Court's function on review is not to try the case de novo or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271, 1275 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S. Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508, 510 (7th Cir. 1986).

Sentence four of 42 U.S.C. § 405(g) authorizes the Court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for rehearing." 42 U.S.C. § 405(g).

I. Whether the VE's Testimony Conflicted with the DOT

Courter first argues that the ALJ erred by failing to ask the VE whether there were any conflicts between his testimony and the Dictionary of Occupational Titles ("DOT"). Specifically, Courter states that all three jobs identified by the VE conflict with

the ALJ's RFC and hypothetical limitation on very fast physical movement or changes in position. The Commissioner responds with two arguments: (1) that Courter's attorney failed to raise any inconsistency issue at the administrative hearing; and (2) the ALJ's error in failing to ask whether any conflicts existed was harmless given that there is, in fact, no controversy between the VE's testimony and the DOT.

The Seventh Circuit has declared that Social Security Ruling ("SSR") 00-4p requires an ALJ "who takes testimony from a vocational expert about requirements of a particular job to determine whether the testimony is consistent with the Dictionary of Occupational Titles." Prochaska v. Barnhart, 454 F.3d 731, 735 (7th Cir. 2006). "When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator *has an affirmative responsibility* to ask about any possible conflict between that VE or VS evidence and information provided in the DOT." Id. (original emphasis added).

1. Courter's Failure to Raise the Issue at the Hearing

In support of its first argument, the government cites Glenn v. Secretary of Health and Human Services, 814 F.2d 387, 391 (7th Cir. 1987), where the Seventh Circuit noted that "[w]hen an applicant for social security benefits is represented by counsel the administrative law judge is entitled to assume that the applicant is making the strongest case for benefits." Although not specifically cited by the government, its argument is essentially identical to that found in Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002). In that case, the Seventh Circuit interpreted SSA 00-4p as follows:

> This ruling requires the ALJ to '[e]xplain [in the] determination or decision how any conflict [with the *Dictionary*] that *has been identified* was resolved.' The ruling requires an explanation only if the discrepancy was 'identified' – that is, if the

  claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing . . . is too late. Id. (original emphasis added).

However, in <u>Prochaska</u>, 454 F.3d at 735, the Seventh Circuit reversed the district court's reliance on the aforementioned standard.

  In <u>Prochaska</u>, the Court first emphasized that its interpretation of SSA 00-4p in <u>Donahue</u> was merely dicta as SSA 00-4p was promulgated after the administrative hearing had occurred. The Court then went on to clarify that SSA 00-4p "emphasizes that before relying on [a vocational expert's] evidence to support a disability determination or decision, an ALJ must perform the required inquiry." <u>Id.</u> (original emphasis added). The Court also discussed that since <u>Donahue</u>, other circuits have similarly held that SSA 00-4p requires "an affirmative duty on the part of an ALJ to inquire about conflicts between the vocational expert and the DOT." Id. (citing <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 557 (3rd Cir. 2005); <u>Hackett v. Barnhart</u>, 395 F.3d 1186, 1175-75 (10th Cir. 2005); <u>Burns v. Barnhart</u>, 312 F.3d 113, 127 (3rd Cir. 2002)).

  Accordingly, given binding precedent in this Circuit, this Court disagrees with the Commissioner's argument that Courter forfeited his SSR 00-4p argument by failing to raise the issue at the hearing. *See* <u>Prochaska</u>, 454 F.3d at 735 (discussing that the "[claimant] was not required to raise the issue at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ"). Given the requirements set forth in <u>Prochaska</u>, the Court finds that this matter must be reversed and remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

  2. Commissioner's Argument that the ALJ's Error was Harmless

In its second argument, the government states that "[t]he ALJ's failure to ask the VE whether his testimony was consistent with the DOT was harmless error because, in fact, there is no inconsistency between the VE's testimony and the DOT." The specific positions identified by the VE and relied on by the ALJ in step five of his analysis were a table operator helper, machine stacker, and conveyor feeder.

In his brief, Courter responds that each job, as defined in the DOT, requires certain physical abilities that he is unable to perform given his limited RFC. Specifically, Courter states that the three positions require "frequent reaching and constant handling." Given the ALJ's hypothetical limitation and RFC stating that work should not involve very fast physical movements, Courter contends that questions arise as to "what kinds of motions such an operator would need to perform, and how quickly so as to be able to do the job competitively."

Although the government responds that the VE's testimony does not conflict with the DOT, it is not clear to this Court whether the DOT's "frequent reaching and constant handing" description is, in fact, consistent with Courter's RFC and the hypothetical limitation. Furthermore, even if the Court could make such a determination, it is not its function to do so. *See* Prochaska, 454 F.3d at 736 (discussing that any inconsistency determinations "should have been made by the ALJ in the first instance, and his failure to do so should have been identified and corrected by the Appeals Council").

Accordingly, the Court cannot find that the Commissioner's finding is supported by substantial evidence as there is an "unresolved potential inconsistency that should have been resolved." *See* id. (citing Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). This matter is therefore remanded so the Commissioner can conduct further

proceedings to determine whether the VE's testimony is consistent with the DOT and Courter's RFC limitation.

## CONCLUSION

Here, for the foregoing reasons, the Court finds it appropriate to remand this action pursuant to sentence four. The Commissioner's decision in this matter is REVERSED, and the case is remanded for rehearing in accordance with the requirements set forth in <u>Prochaska</u> as previously discussed in this Order. All pending motions are now MOOT, and the Clerk's office is directed to enter judgment in favor of Plaintiff and against Defendant.

ENTERED 24th this day of July, 2008.

<u>s/ Michael M. Mihm</u>
Michael M. Mihm
United States District Judge